**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

MITCHELL C. JORDAN          *
                           *
            v.             *          Civil Action WMN-09-CV-2882
                           *
DENNIS R. MOORE, II        *

    *    *    *    *    *    *    *    *    *    *    *    *

**MEMORANDUM**

This case is on appeal from the Order of United States Bankruptcy Judge Robert A. Gordon granting summary judgment in favor of the Appellee Dennis R. Moore, II in an adversary proceeding before the Bankruptcy Court.  Judge Gordon determined that, based on the theory of collateral estoppel, a default judgment and a punitive judgment award that Moore obtained against Appellant Mitchell C. Jordan in the Maryland Circuit Court for Baltimore City constituted a debt arising from willful and malicious injury and was, therefore, non-dischargeable under 11 U.S.C. § 523(a)(6) in Jordan's bankruptcy.  This Court has jurisdiction pursuant to 28 U.S.C. § 158(a)(1), as Jordan's appeal arises from the final order entered by the United States Bankruptcy Court for the District of Maryland and is brought pursuant to Local Rule 404.  The Court has reviewed the pleadings and for the reasons stated below, the Order of United States Bankruptcy Judge Gordon will be affirmed.

## I.    BACKGROUND

The complicated state court proceedings in this matter started on December 29, 1997, when Moore filed a Complaint against Jordan in the Circuit Court for Baltimore City making two claims: 1) assault and battery, and 2) intentional infliction of emotional distress.  Moore alleged that Jordan had violently beaten him in front of a pub, telling Moore to stay away from his girlfriend.  Moore also alleged that Jordan's harassment continued after the beating with false allegations made to the police resulting in his detention at the side of a road and additional threats when the two found themselves at the same club at the same time.  As a result Moore alleged that he suffered significant injury, severe emotional distress and anxiety.  Jordan responded by filing a motion to dismiss for improper venue on April 14, 1998.  The day prior to Jordan filing his motion to dismiss, Moore served Jordan with discovery requests.  Jordan, represented by counsel, never responded to those requests despite being ordered to do so by the Circuit Court on October 2, 1998.  Moore thus filed a motion for sanctions, to which Jordan did not respond.  As a result, Judge Thomas Noel in the Circuit Court entered default judgment against Jordan as to liability on the two claims on November 18, 1998.

A month later Jordan filed a motion to vacate/strike default judgment alleging that he had received no notice of the court's order compelling discovery and that the order was improper.  Judge Noel's law clerk sent Jordan's counsel a letter stating that the judge was not going to change his decision on the default judgment.

On March 1, 1999, Judge Albert J. Matricciani denied, without a hearing, Jordan's motion to dismiss.[1]  Jordan then filed a motion to alter or amend the denial of the motion to dismiss on March 15, 1999, arguing that he had never been granted a hearing as required by law.  After a hearing on that motion, Judge Matricciani denied the motion to alter or amend. Jordan then filed on June 23, 1999, a Notice for In Banc Review, appealing Judge Matricciani's denial.  Following a hearing on

---

[1] Jordan alleges in his brief that this denial appears to pertain to a second Motion to Dismiss that he filed following the entry of the order of default and that he has never received notice of the disposition of his original motion to dismiss.  Jordan's statement is disingenuous, however.  The Maryland Court of Special Appeals discussed Judge Matricciani's denial of his Motion to Dismiss for Improper Venue.  Jordan v. Moore, No. 655 September Term, 2004, at 14 (Md. Ct. Spec. App. Dec. 27, 2005). Judge Matricciani held a hearing on June 9, 1999, on Jordan's claim of improper venue included in his motion to alter or amend the default judgment.  Id. 14-15.  At the hearing, the court declined to exercise its discretion in transferring the action to another county.  Id.  Thus, whether the denial came about as a result of Jordan's original motion or a later motion, he received a ruling on the issue of venue and the Court of Special Appeals found that "despite appellant's dissatisfaction with that outcome," it was "satisfied that he, in fact, had the hearing he sought on this issue."  Id. at 15.

that motion, on April 6, 2000, a panel of three circuit court judges issued a written memorandum that held that the panel did not have jurisdiction to review the denial of the motion to dismiss because it was not a final judgment and because it had not been timely filed.  The panel ordered that the matter be set for a trial on damages.   On June 23, 2000, Jordan filed a motion for ruling on Jordan's motion to vacate/strike default judgment arguing that there should not be a ruling on damages until there was a ruling on his December 1998 motion.

Judge Carol Smith in the Circuit Court for Baltimore City held a hearing before a jury solely on the issue of compensatory and punitive damages on June 28 and 29, 2000.  Jordan's counsel represented that she was unprepared to proceed on the damages hearing because, although she had received notice that the hearing would take place, she took the position that 1) the default judgment was a denial of due process as the motion to dismiss had not been ruled on prior to the default judgment; and 2) that there had been no ruling on Jordan's motion to vacate/strike default judgment.  Transcript of Inquisition Hearing on Damages, June 28, 2000, at 5-7, 14, 18-19, Moore v. Jordan, No. 97-363042CC9132 (Md. Cir. Ct. Baltimore City).

Judge Smith disagreed with both arguments.  She pointed out that the discovery rules require responses to discovery even if there is an outstanding motion to dismiss, and in particular

4

where the court has ordered the party to respond.  Id. at 14-15.
She also found that the letter from Judge Noel's clerk stating
that he had reviewed the file and "decided not to change his
rulings regarding the discovery motions" was an indication of
Judge Noel's response to the motion to vacate/strike and,
therefore, treated the motion as denied.[2]  Id. at 11.  Moreover,
Judge Smith instructed Jordan's counsel that even if both
motions had been outstanding, counsel had been informed of the
hearing and had time to prepare.  Id. at 19.  As a result, the
hearing proceeded.

Jordan's counsel's presentation and cross-examination at
the damages hearing was significantly limited.  Because Jordan
failed to respond to Moore's discovery requests or to file a
motion for a protective order, even after the motion to dismiss

---

[2] Here again, Jordan's argument regarding the motion to
vacate/strike was disingenuous.  The Court of Special Appeals
found that the issue of Judge Noel's letter arose at the June 9,
1999 hearing on his motion to alter or amend the order of
dismissal.  Jordan v. Moore, No. 655 Sept. Term, 2004, at 15
(Md. Ct. Spec. App. Dec. 27, 2005).  Judge Matricciani advised
Jordan's counsel that she should submit an order to Judge Noel
to be signed, but made it clear that it was the court's belief
that Judge Noel was not planning to take any further formal
action.  Id.  Judge Matriacciani further instructed counsel that
"You might want to call his Clerk and say, you know, what's the
easiest thing to do at this point, if you want to perfect the
record," to which she responded: "Yes, I do."  Id. at 16.  The
Court of Special Appeals concluded that "[b]ecause his counsel
was told how to remedy the problem and said that she would do
so, appellant cannot now claim judicial error based on his
counsel's failure to fulfill the promise she made the court."
Id.

had been denied, Moore moved, and the Circuit Court granted, in limine to prohibit Jordan from presenting evidence or cross-examining on the issue of liability and on any of the subjects covered by the discovery requests unless Moore opened the door on direct examination.  Id. at 19-25.  In addition, Jordan's counsel was unable to cross-examine Moore's expert because she chose not to attend the de bene esse video deposition and the video was shown at the hearing.  Id. at 16.  Finally, out of a combination of Jordan's counsel's lack of preparation for the hearing and the motions in limine, Jordan's only witness was himself.  Nonetheless, Jordan's counsel presented opening and closing statements, cross-examined Moore's witnesses and participated in voir dire and in determining jury instructions.

Following the hearing, the jury awarded Moore $120,770.23 in compensatory damages and indicated on the verdict sheet that it had found "by clear and convincing evidence that the actions of the defendant were malicious or outrageous, and in light of the risks and dangers which were known or should have been known, defendant's conduct indicated a disregard for the rights and safety of the plaintiff, or showed a conscious indifference to the consequences."

On May 6-8, 2002, Judge Smith held a hearing on the issue of punitive damages, which resulted in an award of $60,000. Jordan filed notice of an appeal the next day.  Meanwhile, Moore

filed a motion to alter/amend judgment or in the alternative for a new trial asserting that Jordan had withheld financial information and made misrepresentations to the court regarding his financial position.  The Maryland Special Court of Appeals remanded the case to the Circuit Court for consideration of Moore's outstanding motion to alter/amend judgment.  On December 23, 2003, the Circuit Court granted Moore's motion and a new punitive damages hearing took place on April 21, 2004.  Moore presented testimony and evidence regarding assets previously undisclosed by Jordan during discovery.  Following the hearing, Judge Smith awarded Moore $100,000 in punitive damages.[3]  To assist her in determining the new amount, Judge Smith applied the facts developed at the damages hearing to the punitive damages factors proscribed in <u>Bowden v. Caldor</u>, 710 A.2d 267 (Md. 1998).[4] In considering the factor regarding the gravity of Jordan's conduct, Judge Smith stated that

---

[3] Judge Smith also granted Moore's motion for sanctions finding that Jordan and his attorney were in contempt for failing to comply with pre-trial discovery requests and ordered them to pay Moore's counsel $10,845.00 in attorney's fees.

[4] The Maryland Court of Appeals provided the <u>Bowden</u> factors as guidance for courts to use in reviewing jury determined punitive damages awards for excessiveness.  The nine factors are 1) the gravity of the defendant's wrong; 2) the defendant's ability to pay; 3) the deterrence value; 4) comparison with comparative criminal penalties in the state; 5) comparison with other comparative punitive damages awards in the jurisdiction; 6) prior punitive damages awards against the same defendant; 7) the number of torts upon which the penalty is based; 8) the

the gravity of the defendant's conduct in beating the
plaintiff and not merely beating him to the ground,
but then jumping on him, stomping on him, and causing
a complicated fracture of the plaintiff's ankle.  I
realize and I understand . . . that the liability
issue was determined by and in fact the default
judgment, but there was testimony sufficiently
presented at the June 2000 proceedings about what
happened and that came chiefly from Mr. Moore, himself
that he was, as I noted page 2-11 of the proceedings
on June 29, 2000 Mr. Moore stated; I was assaulted by
Mitchell Cole Jordan in the parking lot of my friend's
pub.  He beat me to the ground and he jumped on my leg
– broke my leg and yelled he said; now stay away from
my girlfriend [expletive omitted]. . . .

We know that the plaintiff was taken to Franklin
Square by ambulance.  We know that he had at least
three surgeries as I recall.  We know that the
condition of the nature of the injury was so severe
that . . . his entire foot was turned around in this
ankle injury and the fracture is described as I noted
multiple surgeries.  So whatever it was that happened
in the parking lot . . . when he was down and on the
ground and already beaten, the action taken by the
defendant, I am satisfied, was grave and severe.  The
jury as noted at the original trial on . . . the
compensatory damages was asked to answer questions
about whether or not punitive damages -- there was a
punitive damages entitlement.  Whether there was
malice, ill will, etc.  The jury rendered its answer
yes.  I reviewed that for the point of the gravity of
the matter.

I also note that there was a continuing -- there
were other incidents as well . . ., which had to do
with at least two other incidents where the defendant
at one time on the road coming back from Ocean City
followed the plaintiff and made a call to the State
Police which resulted in the plaintiff being stopped,

---

plaintiff's reasonable costs and expenses resulting from the
defendant's malicious and tortious conduct that are not covered
by the compensatory damages, i.e., litigation expenses; and 9)
whether the punitive damage award bears a reasonable
relationship to the compensatory damages award.  <u>Bowden</u>, 710
A.2d at 278-85.

arrested, handcuffed, held to the side of the roadway,
inconvenienced, delayed, he was to pick up his child,
showed considerable anxiety and no charges ever
succeeded there because apparently it was realized
that this was just at the instigation of the defendant
in this case.

Another occasion when at some sort of club or
whatever Mr. Moore and Mr. Jordan had the bad fortune
to be in the same place at the same time and threats
made to Mr. Moore by this defendant after he had
already been stomped and seriously injured threats
that -- my point is that this pattern of ill behavior,
of malicious conduct by this defendant continued.  It
just didn't happen on the date when the plaintiff's
ankle was severely injured by having been stomped, a
man down on the ground lying there being the subject
of being further harmed and clearly not in any sense a
threat to Mr. Jordan at that point since he was down
and thereafter certainly no threat because he couldn't
get up, but there is the gravity of this defendant's
conduct in the first incident of the stomping
continuing with a pattern of causing the arrest of an
individual who had done nothing wrong, causing the
humiliation sitting on the side of the road with
people passing by, causing the anxiety, etc.  I
realize there was a compensatory damages award but I
think that I highlight those points with respect to
what I perceive to be the gravity of this defendant's
conduct.

Transcript of Punitive Damages Verdict, April 21, 2004, at
21-24, Moore v. Jordan, No. 97-363042CC9132 (Md. Circuit
Ct. Baltimore City).

Jordan appealed the granting of the judgment on liability

and the award of punitive damages to the Court of Special

Appeals.  The Court of Special Appeals affirmed both rulings.[5]

---

[5] Jordan also appealed the contempt sanctions, which the Court of
Special Appeals vacated.

On June 17, 2007, Jordan filed for protection under Chapter 7 of the Bankruptcy Code.  On September 5, 2007, Moore filed an adversary case against Jordan seeking a determination of non-dischargeability of the Judgment, pursuant to 11 U.S.C. § 523(a)(6) for willful and malicious injury.  Moore then filed a Motion for Summary Judgment, to which Jordan responded. Supplemental pleadings were filed by both parties in response to requests from the Bankruptcy Court at hearings on March 26, 2008, and May 14, 2008.  On September 22, 2008, the Bankruptcy Court conducted a hearing on the summary judgment motion at which he gave his ruling.  In reaching his decision, the Bankruptcy Court reviewed the jury verdict, the unreported opinion of the Court of Special Appeals, and the record of both punitive damages hearings and concluded that collateral estoppel applied to the issue of willful and malicious injury.  Judge Gordon found that neither the jury verdict nor the Court of Special Appeals opinion was sufficient to establish collateral estoppel.  Judge Gordon found, however, that Judge Smith's analysis of the facts when determining the punitive damages award was sufficient to establish that 1) the Circuit Court had conducted fact-finding determinative of the issue of willful and malicious injury; 2) the Circuit Court concluded that Jordan's conduct evidenced his intent to cause Moore's injuries; and 3) the specific facts found by the Circuit Court supported the

conclusion that the debt owed to Moore was non-dischargeable under the provisions of 11 U.S.C. § 523(a)(6).

Jordan filed a Motion to Alter or Amend Judgment with the Bankruptcy Court on October 2, 2008, which the court denied. Jordan noted an appeal to this Court on October 2, 2009.

## II.   STANDARD OF REVIEW

The district court acts as an appellate court when reviewing appeals from the bankruptcy court and reviews conclusions of law and grants of summary judgment de novo. Tidewater Finance Co. v. Williams, 341 B.R. 530, 533 (D. Md. 2006).  "The district court may affirm, modify, or reverse a bankruptcy judge's order, or remand with instructions for further proceedings."  Id.  Summary judgment is proper if the evidence before the court, consisting of the pleadings, depositions, answers to interrogatories, and admissions of record, establishes that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In assessing such a motion, the Court must view the evidence and all justifiable inferences in the light most favorable to the party opposing the motion.  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam).

## III. DISCUSSION

Principles of collateral estoppel are applicable in
dischargeability proceedings in bankruptcy.  Grogan v. Garner,
498 U.S. 279, 284 & n. 11 (1991).  "In determining the
preclusive effect of a state-court judgment, the federal courts
must, as a matter of full faith and credit, apply the forum
state's law of collateral estoppel."  In re McNallen, 62 F.3d
619, 624 (4th Cir. 1995).  Here, as Moore seeks to apply
collateral estoppel from the default judgment of the Circuit
Court of Maryland, the Maryland law of collateral estoppel
controls.

Maryland courts follow the Restatement definition of
collateral estoppel, also referred to as issue preclusion.  See
Murray Int'l Freight Corp. v. Graham, 555 A.2d 502, 504 (Md.
1989).  "When an issue of fact or law is actually litigated and
determined by a valid and final judgment, and the determination
is essential to the judgment, the determination is conclusive in
a subsequent action between the parties, whether on the same or
a different claim."  Id. (quoting Restatement (Second) of
Judgments § 27 (1982)).  Thus, in order for collateral estoppel
to apply, the issue to be precluded must have been 1) actually
litigated; and 2) essential to a valid and final judgment.

**A. Actually Litigated:**

**1. Default Judgment**

Jordan's primary argument focuses on whether the issue of willful and malicious injury was "actually litigated."  Jordan contends that because liability was determined based upon a default judgment that the issue of "willful and malicious injury" was not "actually litigated" and cannot be found to be conclusive in his bankruptcy proceeding.  Jordan is correct that Maryland has recognized the position found in comment (e) to the Restatement (Second) of Judgments, § 27, which states that, "'[i]n the case of a judgment entered by confession, consent, or default none of the issues is actually litigated,' and the rule 'does not apply with respect to any issue in a subsequent action.'"  United Book Press, Inc. v. Maryland Composition Co., Inc., 786 A.2d 1, 11 (Md. Ct. Spec. App. 2001).  It is not entirely clear, however, whether Maryland has adopted the position that a default judgment, which it has equated with an admission of liability, can be used for the purposes of collateral estoppel.  Compare Porter Hayden Co. v. Bullinger, 713 A.2d 962, 971-72 (Md. 1998) (quoting Curry v. Hillcrest Clinic, Inc., 653 A.2d 934, 945 (Md. 1995) ("Curry stands for the proposition that a default judgment should be treated as an admission of liability.")) with id. at 976 (Rodowsky, J., concurring and dissenting) ("Generally, the rule is that a default judgment will support claim and defense preclusion, but not issue preclusion against a third party.").  The Court need

13

not resolve this issue, however, as the bankruptcy court's
decision, which this Court affirms, was not based on the
preclusive effect of the default judgment as to liability, but
on the preclusive effect of Judge Smith's determination as to
punitive damages.[6]

### 2. Damages Hearing

Jordan's next argument is that the damages hearing did not
constitute actual litigation of the issue because Judge Smith
granted Moore's motion in limine precluding Jordan from
presenting evidence on the issues relating to liability. [7]
Jordan produces no case law, however, nor has this Court found

---

[6] The Court notes, however, that the Bankruptcy Court cited to In
re. McCoskey, Bankr. No. 04-37721-SD, Adversary No. 05-1267-SD,
2006 WL 5217793 (Bankr. D. Md. Feb. 21, 2006) for the
proposition that a default judgment is entitled to collateral
estoppel.  The McCoskey court, in turn, relied upon the Maryland
Court of Special Appeals decision in Nationwide Mutual insurance
Co. v. Webb, 409 A.2d 1127, 1129-30 (Md. 1980) for the same
conclusion.  Nationwide Mutual was based on res judicata, or
claim preclusion, however, and not issue preclusion.  Nationwide
Mutual's determination that a default judgment can be used for
claim preclusion is consistent with Judge Rodowskey's dissent in
Porter Hayden, discussed above.  Thus, to the extent that the
Bankruptcy Court relied on McCoskey for the proposition that a
default judgment supports issue preclusion, its conclusion is
not correct.

[7] Jordan additionally raises the argument that the damages
hearing violated his Constitutional right to due process because
of the restrictions that the Circuit Court imposed on him as to
the evidence he could present.  Whether the hearing violated due
process, however, was a question Jordan should have raised on
appeal of the judgment, not on appeal from the Bankruptcy
Court's ruling as to collateral estoppel.  Therefore, this Court
will refrain from ruling on the question of whether the hearing
violated Jordan's due process rights.

any, to support his contention that an issue may not be considered actually litigated when the issue is litigated but the party's ability to do so is restricted on the basis of failing to provide discovery responses.

Here, Jordan, represented by counsel, failed to provide discovery responses to Moore even after the Circuit Court ordered him to do so, even after the court ruled on his motion to dismiss, and, even after he was given notice regarding the damages hearing.  As a result, Judge Smith prohibited Jordan from presenting evidence of which Moore should have been made aware via Jordan's discovery responses.  Jordan still had the opportunity to present evidence and cross-examine Moore's witnesses outside of that limitation.  Yet, Jordan chose, as a matter of case strategy, not to prepare prior to the hearing because of a belief that he had not received a proper ruling on his motion to vacate/strike default judgment despite notice that the hearing would be conducted on the day that he appeared.  Thus, Jordan cannot now say that because, as a matter of strategy, he chose not to respond to discovery requests made by Jordan and chose not to prepare for the damages hearing that the issue was not "actually litigated."

Similarly, he argues that the only finding-of-fact made by the jury was the compensatory damages award since the court instructed it not to consider his liability.  He indicates in

his brief that he was surprised that the jury was asked whether
punitive damages were warranted.  Significantly, however, Jordan
admits in his brief that "during the compensatory damages
hearing, the jury heard testimony and was presented with
evidence concerning the events alleged in the complaint – not
solely the Plaintiff's resulting damages."  Brief of Jordan at
22-23.  Moreover, the record shows that Jordan was aware from
the outset that the jury would be determining whether punitive
damages were appropriate, and that he participated in the
wording of the jury instructions and verdict sheet.  Transcript
of Inquisition Hearing on Damages, June 28, 2000, at 25-42, and
June 29, 2000, at 88-89, Moore v. Jordan, No. 97-363042CC9132
(Md. Cir. Ct. Baltimore City).  Thus, it cannot be said that the
issue of the nature of his conduct was not litigated or that the
jury did not make a finding-of-fact in that regard.  Regardless,
Judge Gordon's decision was not based on the jury's verdict, but
on Judge Smith's finding of fact.

### 3. Judge Smith's Punitive Damages Award

More to the point of Judge Gordon's decision, Jordan argues
that the statements made by Judge Smith at the second hearing on
punitive damages relating to the gravity of Jordan's conduct
cannot be considered "findings-of-fact" for the purposes of
collateral estoppel.  His first reason is that the default
judgment established liability and the jury made the only

16

factual findings necessary to the judgment when they found that his malicious or outrageous conduct entitled Moore to punitive damages. Jordan contends that Judge Smith was not acting as a trier-of-fact, but was solely determining the appropriate award of punitive damages in light of the jury's findings and the circumstances of the case. Moreover, he argues that her statements were not findings-of-fact because she was solely conducting a review of the Bowden factors in order to justify the amount of the punitive damages award.

The Court disagrees with Jordan's contention. Jordan is correct that the Maryland Court of Appeals set out factors in Bowden to provide guidance to trial courts in determining if a punitive damages award is excessive. Thus, when reviewing a punitive damages award set by a jury, the judge is not acting as a second trier-of-fact, but is performing a legal function. Bowden, 710 A.2d at 288. Here, however, the jury did not set the punitive damages award and so there was nothing for Judge Smith to review. Rather, Judge Smith was acting as the trier-of-fact when she determined the appropriate punitive damages award based on the facts of the case. That she used the Bowden factors to guide her decision does not remove that fact-finding role.

**B. Identity of the Issues**

Under 11 U.S.C. § 523(a)(6), a debt is not dischargeable in a Chapter 7 bankruptcy if it arises from a "willful and malicious injury by the debtor to another." Jordan's final argument is that there was never any finding-of-fact or conclusive determination on the precise issue of "willful and malicious injury." Jordan correctly contends that in order for collateral estoppel to apply to § 523(a)(6), it is not enough that the state court determined that the debtor deliberately or intentionally performed the act that led to injury to the creditor, but rather the issue that must have been litigated and necessary to the judgment is that the debtor actually intended the act to cause the injury inflicted. Duncan v. Duncan, 448 F.3d 725, 729 (4th Cir. 2006) (citing Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998)). Thus, Judge Gordon correctly concluded that the jury verdict finding that punitive damages were warranted because "the actions of the defendant were malicious or outrageous, and in light of the risks and dangers which were known or should have been known, defendant's conduct indicated a disregard for the rights and safety of the plaintiff, or showed a conscious indifference to the consequences" was not sufficient to collaterally estop litigation as to whether Jordan intended to cause the injury inflicted.

As noted by Judge Gordon, the first problem with this verdict is that it is in the disjunctive so it is not possible

to know if the jury concluded that the defendant's actions were malicious or outrageous.  Moreover, the verdict indicates a finding of 1) conduct that was in disregard of the safety of Moore or 2) conduct that exhibited a conscious indifference to the consequences to Moore.  Neither of these categories rise to the level of "a finding of willful and malicious injury" because neither required Moore to prove that Jordan intended to injure him.  See Duncan, 448 F.3d at 729-30.

Jordan would have the analysis stop here, but in Maryland, "[i]n determining whether an issue has been actually litigated, courts may look beyond the judgment to examine the pleadings and evidence presented in the prior case." United Book Press, Inc. v. Maryland Composition Co., Inc., 786 A.2d 1, 12 (Md. Ct. Spec. App. 2001) (citing Colandrea v. Wilde Lake Community Ass'n, Inc., 761 A.2d 899 (Md. 2000) ("'[F]or the doctrine of collateral estoppel to apply, the probable fact-finding that undergirds the judgment used to estop must be scrutinized to determine if the issues raised in that proceeding were actually litigated, or facts necessary to resolve the pertinent issues were adjudicated in that action.'") (emphasis added)).  Here, Judge Gordon properly looked to Judge Smith's application of the evidence from the damages hearing to analyze the gravity of Jordan's conduct and determine the punitive damages award.  The Court agrees with Judge Gordon that Judge Smith's analysis was a

fact-finding, her fact-finding was essential to her determination of the punitive damages award, and "defendant's conduct, . . . [was] sufficiently deliberate for the purpose of causing the specific injury suffered by the plaintiff so as to determine that his intent to cause that injury is conclusively established as a fact."  Transcript of hearing on motion for summary judgment, Sept. 22, 2008, at 26, <u>Jordan v. Moore</u>, Case No. 07-15516 (Bankr. D. Md).

This Court's decision is supported by the decision of the Maryland Court of Special Appeals, upholding Judge Smith's punitive damages award.  The Court of Special Appeals concluded, after reviewing Judge Smith's analysis of the "gravity of the defendant's wrong," that "Jordan's conduct satisfied the requirements of assault in the first degree because he intentionally caused serious physical injury to Moore."  <u>Jordan v. Moore</u>, No. 655 Sept. Term, 2004, at 22 (Md. Ct. Spec. App. Dec. 27, 2005).

Thus, the record of the Maryland Circuit Court supports a finding that collateral estoppel applies here and the entire award should be non-dischargeable.

## IV.   Conclusion

For the foregoing reasons, the Order of United States Bankruptcy Judge Gordon will be affirmed.   A separate order will issue.

_____/s/_____
William M. Nickerson
Senior United States District Judge

DATED: March 16, 2010